## Commonwealth v. Eisenhauer.

*Criminal law—Parole—Hearing for parole—Untruthful statements—Discretion of court—Act of May 11, 1923, P. L. 204.*

1. Where a prisoner applying for parole makes untruthful statements at the hearing for parole, has been an habitual criminal and his bearing at the hearing makes an unfavorable impression on the court, a parole will be refused.

2. Paroles are grantable only when, in the exercise of a judicial discretion, the court is convinced that the character of the prisoner and the circumstances of the case are such that he is not likely to engage again in an offensive course of conduct, and that the public good does not require that he should suffer the penalty imposed by law.

Petition for parole. Q. S. Schuylkill Co., Sept. Sess., 1921, Nos. 934 and 935.

*Henry Houck*, for petitioner; *C. M. Palmer*, District Attorney, contra.

BERGER, J., April 26, 1926.—The defendant, Charles Eisenhauer, petitioned for a parole, and the case was so proceeded in under the Parole Act of May 11, 1923, P. L. 204, that it is now properly before our court for disposition. The petitioner, William Neiswender, and Henry Heiser, having been charged with breaking and entering with intent to commit a felony, waived the finding of a true bill and pleaded guilty Sept. 12, 1921, to No. 934, September Term,

Commonwealth *v.* Eisenhauer.

1921, and were each sentenced to imprisonment for a period of eight months. On the same date, also having waived the finding of a true bill, the same persons and one Joseph Fedula, charged with breaking and entering with intent to commit a felony, pleaded guilty. These felonies were committed about a year apart, against the same owner and the same building, the place entered each time having been a store at Weston Place. The value of the property taken each time was about $1500. The aggregate sentence on both bills imposed upon each of three defendants, the petitioner being one, was seven years and eight months. Fedula was sentenced to seven years on one bill only. Neiswender and Fedula early made applications for parole; each was refused and neither ever applied for a pardon. The petitioner's period of imprisonment, with commutation off, will expire Oct. 9, 1926.

Each of the petitioner's co-defendants, except Fedula, had a previous criminal record. All of them, save Fedula, after their apprehension and before waiving the finding of a true bill, signed a confession admitting that, but for their arrest, they had planned to rob, the second day next succeeding their arrest, a paymaster for Madeira, Hill & Company, of an estimated pay-roll of eight to nine thousand dollars, at a place somewhere between Mahanoy Plane and Maizeville. Fedula signed a confession admitting that he had entered into this scheme, but asserted that he had withdrawn from it before he was arrested. The petitioner, before the commission of the felonies for which he was imprisoned, had pleaded guilty before me to six separate bills of indictment, each charging breaking and entering with intent to commit a felony. These bills of indictment are as follows:

No. 141, March Sessions, 1919, entering the Dunlap storage-house and stealing therefrom thirty-two cement bags.

No. 141 A, March Sessions, 1919, entering J. J. O'Hearn's garage and stealing therefrom a quantity of brass fittings, a pair of gum boots, five automobile tires and a quantity of lead.

No. 141 B, March Sessions, 1919, entering Joseph Hall's garage and stealing therefrom two automobile tires, three inner tubes and six automobile lamps.

No. 141 C, March Sessions, 1919, entering the Home Brewing plant and stealing therefrom five bottles of soda-water, one large brass fitting and a quantity of beer.

No. 141 D, March Sessions, 1919, entering Dalton's garage and stealing therefrom two automobile tires.

No. 141 E, March Sessions, 1919, entering Longacre's garage and stealing therefrom four automobile lamps.

The defendant being eighteen years of age, without a previous criminal record, was committed to the State Reformatory at Huntingdon, where he remained one year and learned the plastering trade.

His present plea for a parole is based on his assertion that George Hughes, of Schuylkill Haven, will hire him as a plasterer if he is released now; the fact that he has done plastering work in the county jail during his period of confinement, worth at prevailing wages, he says, $2000 or more; and on his assertion that he thinks he can and will lead an honest life if paroled. Notwithstanding his pleas of guilty on two separate bills of indictments to having entered the Weston Place store twice, he stated, when examined in support of his application for a parole, that he had entered the Weston Place store only once. And in the face of the record showing that he had been committed to the Huntingdon Reformatory for the commission of six different felonies, he testified that he was sentenced to the Huntingdon Reformatory "for taking store boxes . . . from a shanty on the hill." The fact that he recalled the

name of the sentencing judge is satisfactory evidence that his memory is not defective.

The action of the court in passing upon a petition for parole is the exercise of a judicial discretion. It is important that this discretion be exercised at all times fairly and without abuse, but it must be remembered that mere sympathy for an offender is not a sufficient foundation to call for the affirmative exercise of this discretionary power. In Com. v. Donovan, 6 D. & C. 333, Smith, P. J., exercised discretionary power vested in the court affirmatively, and cited with approval what Edwards, P. J., of Lackawanna County, stated (12 Lacka. Jurist, 291, 292) was the main consideration in disposing of applications for parole, namely, the accomplishment of the reformation of the individual. And Reno, P. J., in Com. v. Kimmel, 6 D. & C. 637, laid down this general rule: "Paroles are grantable only when the court is convinced that the character of the prisoner and the circumstances of the case are such that he is not likely to engage again in an offensive course of conduct and that the public good does not require that he should suffer the penalty imposed by law: Act of June 19, 1911, § 1, P. L. 1055. Unless the petition and the public hearing reveals conclusive evidence of these factors, there will be no parole." He also well supported this rule when he said: "The parole system, at best, is a grafting upon our jurisprudence and is so potential with inherent capacity for grave abuse that we shall not extend its operation beyond the plain letter of the act. . . ."

The facts in this case require no further reference than to say that the prisoner was untruthful in his testimony on the hearing for parole. He is a second offender who has had his day of grace. His conduct after having left the reformatory holds out no well-founded hope of reform by the mere virtue inherent in a parole, and his bearing in court and general appearance have not created a favorable impression. In my opinion, the petitioner's own good and the public good will be best served by refusal of his petition.

Petition for parole is refused.

From M. M. Burke, Shenandoah, Pa.